[No. G016950. Fourth Dist., Div. Three. Nov. 30, 1998.]

TILY B., INC., Plaintiff and Appellant, v.
CITY OF NEWPORT. BEACH, Defendant and Respondent.

[No. G019250. Fourth Dist., Div. Three. Nov. 30, 1998.]

TILY B., INC., Plaintiff and Respondent, v.
CITY OF NEWPORT BEACH, Defendant and Appellant.

[No. G022132. Fourth Dist., Div. Three. Nov. 30, 1998.]

CITY OF NEWPORT BEACH, Plaintiff and Respondent, v.
AN NGUYEN et al., Defendants and Appellants.

## COUNSEL

Ronald Talmo for Plaintiff and Appellant in No. G016950, for Plaintiff and Respondent in No. G019250 and for Defendants and Appellants in No. G022132.

Rutan & Tucker, Jeffrey A. Goldfarb; Robert H. Burnham, City Attorney, Robin Clauson, Assistant City Attorney for Defendant and Respondent in No. G016950, for Defendant and Appellant in No. G019250 and for Plaintiff and Respondent in No. G022132.

Freilich, Kaufman, Fox & Sohagi, Deborah J. Fox, Benjamin Kaufman and Dawn R. Andrews for City of Newport Beach as Amicus Curiae on behalf of Defendant and Appellant in No. G019250.

## OPINION

**BEDSWORTH, J.**—The sine qua non of a life in the law is a willingness to devote a great deal of thought to issues which seldom concern nonlawyers. In this case, for example, we discuss appropriate ways in which to distinguish a theater from a restaurant—something with which the general public

seems to have absolutely no difficulty, but which regularly defies the best efforts of courts and counsel.

This is a dispute over the extent to which the City of Newport Beach may constitutionally regulate the operation of the Mermaid, an adult entertainment establishment owned and operated by Tily B., Inc., of which An and Olivia Nguyen are the sole shareholders (Mermaid).

The Mermaid appeals first from a judgment denying its petitions for writs of mandate to compel the city to issue use and entertainment permits. The city appeals from a judgment holding unconstitutional an ordinance prohibiting nude dancing (the "pasties and G-string" ordinance) and granting a writ of mandate directing it to repeal the ordinance. The Mermaid reconfigured its club to meet city requirements and obtained the needed permits, later revoked by the city, and now it also appeals from a judgment that denied its petition for a writ of mandate ordering the city to set aside the revocation/nonrenewal of its permits, granted summary judgment for the city on the Mermaid's claims for deprivation of civil rights under 42 United States Code section 1983, and permanently enjoined the Mermaid from operating without required city permits.

The Mermaid argues that city ordinances violated its rights under the United States and California Constitutions, and that there were triable issues of fact on its federal civil rights claims precluding summary judgment. The city, in turn, argues that its pasties and G-string ordinance is constitutional.

We hold the city did not violate the Mermaid's constitutional rights in denying the initial permit applications and affirm the decision in No. G016950. The pasties and G-string ordinance is constitutional, so we reverse the decision in No. G019250. The city did not violate the Mermaid's constitutional rights in revoking the later-issued permits, and summary judgment against the Mermaid on the civil rights claims was proper, so we affirm the decision in No. G022132.

I

In 1993, the Nguyens bought a vacant restaurant in Newport Beach. Included in the purchase was a conditional use permit to operate a restaurant with live band music. They wanted to change the fare to adult entertainment and rename the establishment the Mermaid.

The Newport Beach Municipal Code then required a use permit to operate a restaurant, and required an amended permit be obtained prior to any

change in the operational characteristics of the business. (Newport Beach Mun. Code, § 20.72.020.)[1] The Nguyens applied to the city planning commission to amend their use permit to allow them to serve lunch, dinner and snacks, and to offer entertainment on six "theater stages" and in a number of booths for private "couch dances." The planning commission denied the application because of inadequate parking space, and the Nguyens appealed to the city council.

In February 1994, the city council denied the application because the Mermaid did not qualify as a restaurant, the only use for which the site was zoned. The city council found the Mermaid was a theater with ancillary food service, applying a "principal use" or "primary use" test not found in its zoning ordinances, which defined a restaurant as a "business which sells or serves food . . . for consumption on the premises." (§ 20.72.010.) The finding was based on the Mermaid's submitted plan to use approximately 32 percent of the net public area for entertainment, its admission that "food and drink [service] . . . is incidental to the entertainment being provided," and its description in its business license application of the proposed business as "adult theater[s]" with food and beverage service.

In October 1994, admittedly as the result of the Mermaid's lawsuit, the city amended its definition of restaurant to codify the unwritten interpretation. The amended provision defined a restaurant as a business "with the principal purpose" of selling food and beverages for on-premises consumption, adding the requirement that "the area devoted to live entertainment and/or dancing does not exceed twenty percent (20%) of the 'net public area.' " (Newport Beach Ord. No. 94-52, § 2.)

Newport Beach also required an entertainment permit for any business that wanted to provide entertainment in a place where food and beverages were served.[2] In November 1993, the Nguyens applied for an entertainment permit to offer adult entertainment. The entertainment ordinance as then written did not require the city to act on an application within any stated time,[3] and it neither granted nor denied the Nguyen's application.

In January 1994, the city amended its live entertainment ordinance by emergency action that recited as the need for urgency that "an adult business

---

[1]All otherwise undesignated references to "section" are to the Newport Beach Municipal Code.

[2]Section 5.28.020, in effect in 1993, required a permit to offer entertainment "in a restaurant, cafe, night club, bar, coffee house, or other place where food or beverages are served . . . ." Section 5.28 was substantially revised in January 1994 and all further references are to the current code unless otherwise stated.

[3]Section 5.28.040, in effect in 1993, did not impose *any* time within which the city manager had to make a decision on the application. The city concedes this was undeniably unconstitutional (*FW/PBS, Inc.* v. *Dallas* (1990) 493 U.S. 215, 226 [110 S.Ct. 596, 605, 107 L.Ed.2d 603]) and admits it amended the ordinance in response to the Mermaid's challenge.

is planning to open within the City within the next few weeks." (Newport Beach Ord. No. 94-7, § 1.) The Nguyens submitted a second application for an entertainment permit, under the new ordinance, to offer "striptease/cabaret/burlesque where female entertainers will . . . progress from clothed to semi-clothed to nude." The city manager, and then the city council, denied the application for the same reason that the use permit was denied: The Mermaid was a theater but the site was zoned only for restaurant use.

In October 1994, the trial judge denied the Mermaid's writ petitions.

### A

The Mermaid argues the city's licensing scheme for restaurants, as applied, was an unconstitutional prior restraint on its freedom of speech. It says the unwritten primary use test gave the city too much discretion, enabling it to censor the Mermaid's erotic message while allowing others it considered less objectionable to have a use permit. We agree, but conclude that because the amended ordinance cured this defect, the city was not required to issue the use permit.

"Any system of prior restraint . . . 'comes . . . bearing a heavy presumption against its constitutional validity.' " (*Southeastern Promotions, Ltd.* v. *Conrad* (1975) 420 U.S. 546, 558 [95 S.Ct. 1239, 1246, 43 L.Ed.2d 448].) Nude dancing comes within this rule because it is "expressive conduct within the outer perimeters of the First Amendment, though . . . only marginally so." (*Barnes* v. *Glen Theatre, Inc.* (1991) 501 U.S. 560, 566 [111 S.Ct. 2456, 2460, 115 L.Ed.2d 504].) In the leading case dealing with the licensing of sexually oriented businesses, the Supreme Court observed that "[o]ur cases addressing prior restraints have identified two evils that will not be tolerated in such schemes. First, a scheme that places 'unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.' [Citations.] . . . . [¶] Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible. [Citations.]" (*FW/PBS, Inc.* v. *Dallas, supra,* 493 U.S. 215, 225-226 [110 S.Ct. 596, 604-605].)[4]

Applying these principles, the California Supreme Court struck down a bookstore licensing ordinance that neither set standards for issuing a license

[4]In *FW/PBS, Inc.,* the court struck down the licensing scheme before it because ". . . the Dallas scheme does not provide for an effective limitation on the time within which the licensor's decision must be made. It also fails to provide an avenue for prompt judicial review so as to minimize suppression of the speech in the event of a license denial." (*FW/PBS, Inc.* v. *Dallas, supra,* 493 U.S. at p. 229 [110 S.Ct. at p. 606].) We discuss the court's holding *post* in part I.B, where we consider, but reject, the Mermaid's claim that Newport Beach's denial of its application for an entertainment permit was similarly unconstitutional.

nor guaranteed one would be issued even if the applicant met all the stated conditions. It explained the rule is that "[s]tatutes which authorize public officials to license conduct protected by the First Amendment must set forth definite, objective guidelines for the issuance of such licenses." (*Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 661 [97 Cal.Rptr. 320, 488 P.2d 648].)

More recently, in holding unconstitutional a Georgia ordinance that imposed a discretionary fee for a permit required before speaking on public property, the United States Supreme Court explained, ". . . it simply cannot be said that there are any 'narrowly drawn, reasonable and definite standards' [citation] guiding the hand of the Forsyth County administrator. The decision of how much to charge for police protection or administrative time—or even whether to charge at all—is left to the whim of the administrator. There are no articulated standards either in the ordinance or in the county's established practice. The administrator is not required to rely on any objective factors. He need not provide any explanation for his decision, and that decision is unreviewable. *Nothing in the law or its application prevents the official from encouraging some views and discouraging others through the arbitrary application of fees.* The First Amendment prohibits the vesting of such unbridled discretion in a government official." (*Forsyth County* v. *Nationalist Movement* (1992) 505 U.S. 123, 132-133 [112 S.Ct. 2395, 2402-2403, 120 L.Ed.2d 101], fns. omitted, italics added.)

██ The Newport Beach licensing scheme, by defining a restaurant as any place serving food or beverages, yet applying an additional primary use test to the Mermaid, gave the city precisely that impermissible unbridled discretion. (*Forsyth County* v. *Nationalist Movement, supra,* 505 U.S. 123.) The city was free to add that gloss or not, depending on the applicant, and thus to discourage disfavored expression in the form of nude dancing.

The record reveals a stark example of just such naked discrimination. The city gave the Classic Q billiards parlor, across the parking lot from the Mermaid, a use permit as a restaurant while admitting it didn't know how much food was served there. It now says it "erred" in licensing the pool hall. Another view would be that the city exercised its discretion to censor the Mermaid while approving the Classic Q, explicable perhaps, but nonetheless unconstitutional.

The city does not direct us to any standards governing its issuance of use permits, nor have we found any. Its claim of a general policy applying a primary use standard is unpersuasive, particularly in light of its failure to apply that standard to the Classic Q. The findings for denial prepared by the planning department, and submitted to the city council prior to the hearing,

recited that 32 percent of the Mermaid's public space would be used for entertainment. Yet after the Mermaid argued it devoted a substantial portion of that space to food service, the city's planning director changed his figure, testifying at the hearing that upon further review, he concluded that 75 percent of the net public area was for entertainment.

The city argues the primary use test should be implied from the code's definition of "accessory use" as "incidental and accessory to the principal use." (§ 20.87.350.) But the argument is far too tenuous. There is no definition of primary use, and the code definition of "use" undercuts the city's position when it speaks not a word about the claimed primary use test. "Use" is defined as "the purpose for which . . . [the] premises . . . is designed, arranged or intended or . . . is or may be occupied or maintained."

The definition of restaurant in the amended ordinance is another matter. That definition provides precisely the objective standard previously missing: It says that a business cannot qualify as a restaurant if more than 20 percent of its net public area is used for live entertainment or dancing. Under *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111], we apply the amended ordinance rather than the one in existence at the time the permit was denied "to prevent an appellate court from issuing orders . . . contrary to presently existing legislative provisions." (*Id.* at p. 125.)[5] Since the Mermaid's plan was for more than 20 percent entertainment space, the trial judge was correct to deny the writ to compel the city to issue a use permit based on the Mermaid's 1993 application.

The Mermaid argues the amended ordinance too was unconstitutional because the city still had impermissible discretion to deny a restaurant use permit even if an establishment met the 20 percent rule, since there are no standards governing the additional requirement that the "primary purpose" be the sale of food. We need not decide the point. It is of no avail to the Mermaid in its as-applied challenge to the ordinance, for the Mermaid

_____

[5]We note that in 1997, Newport Beach again amended its ordinances governing restaurants and live entertainment. Under the current scheme, no longer is there a definition of restaurant. However, the 20 percent rule is still used to distinguish between eating and entertainment establishments. "Eating and drinking establishments" are defined as "[b]usinesses with the principal purpose to serve prepared food or beverages for consumption on or off the premises" (§ 20.05.050(K)), while "[c]abarets and nightclubs" are defined as "[e]stablishments with the principal purpose of providing live entertainment and/or dancing occupying more than twenty (20) percent of the net public area in conjunction with the serving of food and/or beverages." (§ 20.05.050(I.3).) Since the Mermaid's plan was to use more than 20 percent of its space for entertainment, it would not be an eating establishment under the new classification, but rather a cabaret.

admittedly failed to meet the objective 20 percent test. Hence there was no issue of discretion as the amended ordinance was applied to the Mermaid.

B

Any business wanting to offer entertainment in Newport Beach must obtain an entertainment permit. (§ 5.28.020.) The city manager is required to approve and issue the permit within 10 business days of receipt of a completed application if the stated requirements are met. If not, he must deny the application. (§ 5.28.040(A).) The application must describe the proposed entertainment, provide a site plan, interior floor plan, information about the owner and operator, anticipated opening date, and whether any prior permits were revoked. (§ 5.28.035.) Other requirements are that the business be located in a zone permitting the proposed use, that it provide security guards, sound absorbing insulation, proper signs, indoor patron areas open to view, an on-site manager, and maintain certain hours of operation. (§ 5.28.040(B).) In addition, the applicant must assure the city it will meet a list of specific, objective operational requirements. (§ 5.28.041.)[6]

Written notice of the decision must be served personally or by mail at the address on the application. (§ 5.28.040(A).) An aggrieved applicant may appeal the city manager's denial of a permit by filing a statement with the city clerk within 15 days "following the deposit of a certified letter" advising the applicant of the denial. The city council must hold a hearing at the earlier of 20 days after receiving the notice of appeal or its next regularly scheduled meeting. The hearing can be before the city council, or it can appoint a hearing officer to receive evidence and submit to it findings and recommendations. The city council must render its decision within five days of the hearing or receipt of the hearing officer's findings and recommendations. (§ 5.28.070.)

The Mermaid challenges the city's entertainment permit licensing scheme as a prior restraint on its First Amendment rights, arguing the ordinance is unconstitutional on its face. It says the city manager has too much discretion because he may consider any evidence bearing on the application, the ordinance sets no standards for review by the city council, and sets no time limit on the application process. The Mermaid also charges procedural due process is lacking, because the city manager was not required

---

[6]We discuss the Mermaid's challenges to these latter requirements in part III.A, *post.*

to give notice of information used to deny the permit, and because it was denied the opportunity for a hearing on the evidence he relied upon.[7]

The provisions challenged by the Mermaid do not violate the First Amendment. There is nothing impermissible in authorizing the city manager to "conduct an investigation" to determine if a proposed business complies with municipal requirements. (§ 5.28.040(A).) It would be preposterous to do otherwise. The First Amendment does not require Newport Beach to accept the Mermaid's word that it meets the permit requirements. However the evidence is obtained, the city manager is bound to decide on objective standards that are definite, narrow and specific. That is what the Constitution requires, and these standards pass that muster. (*Forsyth County* v. *Nationalist Movement, supra,* 505 U.S. 123.) The city council, no less than the city manager, was bound by the standards for approval set out in the ordinance, which it duly applied.

Likewise, the scheme satisfies the requirement that ". . . the license for a First Amendment-protected business must be issued within a reasonable period of time, because undue delay results in the unconstitutional suppression of protected speech." (*FW/PBS, Inc.* v. *Dallas, supra,* 493 U. S. at p. 228 [110 S.Ct. at p. 606].) It strains even credulity to suggest, as the Mermaid does, that the ordinance provides only a time limit for approval and none for denial. The city manager must issue a permit after 10 days if the requirements are met. At that point, if no permit is issued, the application is denied and an appeal lies to the city council. While the ordinance does not state when the required written notice of denial must be sent, formal notice is not a prerequisite to appeal. Since an appeal may be taken from "any . . . failure to act upon the part of the City Manager in . . . failing to issue . . . any permit under this Chapter . . . ," the lack of a provision establishing formal notice requirements for a denial is irrelevant. (§ 5.28.070.) Nor is the apparent inconsistency in form of the denial notice one that rises to constitutional dimensions. If the city fails to mail a *certified* letter advising of the denial, the only consequence is that a 15-day period in which to file an appeal is tolled, since that clock begins to run only upon the mailing of a certified letter of denial.[8]

We are equally unconvinced the Mermaid's due process rights were violated. It was told in detail why the application was denied, and given

---

[7]The Mermaid also facially challenges the revocation process for allowing, but not requiring, the city manager to revoke an entertainment permit when the stated conditions were met, and again for providing no standards for review by the city council. We consider this and other arguments addressing the revocation process in part III.B, *post*, in connection with the revocation of the Mermaid's permits in 1996.

[8]Section 5.28.070 provides for the procedure and timing of appeals as follows: "If an applicant is aggrieved by any action or failure to act upon the part of the City Manager in issuing, failing to issue, suspending or revoking any permit under this chapter, such applicant

ample opportunity to contest the evidence. The city manager notified the Mermaid that he denied the application in a letter setting out the facts he relied on, his reasons, and the applicable code sections.[9] In addition, prior to the hearing, the city attorney gave the Mermaid the staff report on the application and the proposed decision denying the permit. At the hearing, counsel for the Mermaid had sufficient opportunity to contest at length each reason for denial.

The Mermaid finally argues it obtained an entertainment permit by default when the city failed to act on its initial 1993 application. It points out section 5.28.090 states that the amended (1994) chapter 5.28 does not affect "any valid live entertainment permit in effect as of the date of this ordinance . . . ." However, this "grandfather" clause does not mean the Mermaid got a permit. While the city could not criminally prosecute the club for operating without a permit (*People* v. *Library One, Inc.* (1991) 229 Cal.App.3d 973 [280 Cal.Rptr. 400]), the Mermaid did not have a permit and so could not be grandfathered in under the existing permit exception. (See *Seven Seventy Corp.* v. *County of Clark* (1996) 112 Nev. 185 [911 P.2d 1187, 1190].)

## II

▉ We turn next to the Newport Beach pasties and G-string ordinance, enacted in 1995. (Newport Beach Ord. No. 95-15.)[10] The city argues its prohibition on total nudity is constitutional under *Barnes* v. *Glen Theatre, Inc., supra,* 501 U.S. 560, and we agree. The trial judge was not at liberty to apply a contrary state decision inconsistent with *Barnes,* and he erred in issuing the writ to repeal the ordinance.

The city's ordinance is somewhat unusual, in that it is directed at owners and managers of adult-oriented businesses, rather than performers. Section

---

may appeal to the City Council by filing with the City Clerk a statement addressed to the City Council setting forth the facts and circumstances regarding the action or failure to act on the part of the City Manager. . . . [¶] . . . The right to appeal to the City Council from the denial, suspension or revocation of any permit required by this chapter shall terminate upon the expiration of fifteen (15) days following the deposit of a certified letter in the United States Post Office advising the applicant of the action of the City Manager and of his or her right to appeal such action to the City Council." (§ 5.28.070(A), (B).)

[9]In a letter dated February 8, 1994, the city manager told Mr. Nguyen that the Mermaid's plan to operate as a theater was not allowed on the site, that three of the proposed five individual "theaters" in the club violated the stage height and/or separation requirements, and that three of the "theaters" violated the prohibition against blocking the view into theater areas.

[10]The pasties and G-string ordinance as originally enacted was codified in chapter 10.54 as section 10.54.020, subdivision (d) (Newport Beach Ord. No. 95-15), but later recodified in chapter 5.28 as the present section 5.28.041, subdivisions R and S. (Newport Beach Ord. No. 96-5.)

5.28.041(R) provides that "[n]o owner or other person with managerial control over an adult-oriented business . . . shall permit any person on the premises . . . to engage in a live showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, and/or the female breasts with less than a fully opaque covering over any part of the nipple or areola and/or covered male genitals in a discernibly turgid state."[11] Violation is not criminal, but instead subject to being enjoined as a public nuisance, and the only sanction is revocation of a club's entertainment and adult-oriented business permits. (§ 5.28.110.) "Adult-oriented business" is broadly defined (§ 5.96.010) and there is no dispute that the Mermaid is such.

*Barnes* was a suit by two establishments and individual nude dancers, to enjoin enforcement of an Indiana public indecency law on the ground it violated their First Amendment rights. The statute made it a misdemeanor to " 'knowingly or intentionally, in a public place . . . [¶] . . . appear[] in a state of nudity,' " defined as " 'the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering or any part of the nipple, or the showing of the covered male genitals in a discernibly turgid state.' " (*Barnes* v. *Glen Theatre, Inc., supra,* 501 U.S. at p. 569, fn. 2 [111 S.Ct. at p. 2462].) In a plurality opinion concurred in by Justices Souter and Scalia, the court upheld the Indiana law.

■ "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .' [Citation.]" (*Marks* v. *United States* (1977) 430 U.S. 188, 193 [97 S.Ct. 990, 993, 51 L.Ed.2d 260].) Thus, Justice Souter's opinion, as the narrowest concurrence, states the law applicable.[12]

Justice Souter took the position that "an interest in freely engaging in the nude dancing at issue here is subject to a degree of First Amendment protection" (*Barnes* v. *Glen Theatre, Inc., supra,* 501 U.S. at p. 581 [111 S.Ct. at p. 2468]), and that the appropriate analysis for judging the limits of

[11]Section 5.28.041(R) applies to an adult-oriented business *"which is not* a theater, concert hall or similar establishment primarily devoted to theatrical performances, . . ." (italics added) and subdivision (S) imposes the same prohibition on an adult-oriented business *"which is* a theater, concert hall or similar establishment primarily devoted to theatrical performances . . . ." (Italics added.)

[12]Justice Scalia concurred "because, as a general law regulating conduct and not specifically directed at expression, [the statute] is not subject to First Amendment scrutiny at all." (*Barnes* v. *Glen Theater, Inc., supra,* 501 U.S. at p. 572 [111 S.Ct. at p. 2463].)

state action burdening expressive acts, as distinct from pure speech, is the test laid down in *United States* v. *O'Brien* (1968) 391 U.S. 367 [88 S.Ct. 1673, 20 L.Ed.2d 672]. (501 U.S. at p. 582 [111 S.Ct. at pp. 2468-2469].) Under *O'Brien,* a government regulation is sufficiently justified if: (1) it is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on the alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. (501 U.S. at p. 567 [111 S.Ct. at pp. 2460-2461].) He differed from the plurality only on the second element of *O'Brien,* as to what government interest is sufficient to justify prohibiting nude dancing, as we discuss below.

On the first element, Justice Souter and the plurality agreed, the indecency statute was clearly within the constitutional power of the state. On the second element, the plurality found a substantial government interest in protecting order and morality. (*Barnes* v. *Glen Theatre, Inc., supra,* 501 U.S. at p. 569 [111 S.Ct. at p. 2462].) Justice Souter, however, rested his concurrence "not on the possible sufficiency of society's moral views to justify the limitations at issue, but on the State's substantial interest in combating the secondary effects of adult entertainment establishments of the sort typified by [Glen Theatre]." (*Id.* at p. 582 [111 S.Ct. at pp. 2468-2469].) Thus, "the State of Indiana could reasonably conclude that forbidding nude entertainment of the type offered at the Kitty Kat Lounge and the Glen Theatre's 'bookstore' furthers its interest in preventing prostitution, sexual assault, and associated crimes." (*Id.* at p. 584 [111 S.Ct. at p. 2470].)

Justice Souter and the plurality agreed that Indiana met the third *O'Brien* condition, that the government interest be unrelated to the suppression of free expression. Justice Souter said the Indiana statute was content neutral because "on its face, the governmental interest in combating prostitution and other criminal activity is not at all inherently related to expression." (*Barnes* v. *Glen Theatre, Inc., supra,* 501 U.S. at p. 585 [111 S.Ct. at p. 2470].) He explained that "[b]ecause the State's interest in banning nude dancing results from a simple correlation of such dancing with other evils . . . the interest is unrelated to the suppression of free expression. *Renton* [*Renton* v. *Playtime Theatres, Inc.* (1986) 475 U.S. 41 [106 S.Ct. 925, 89 L.Ed.2d 29]] is again persuasive in support of this conclusion. In *Renton,* we held that an ordinance that regulated adult theaters because the presence of such theaters was correlated with the secondary effects that the local government had an interest in regulating was content neutral . . . because it was '*justified* without reference to the content of the regulated speech. 475 U.S., at 48 [106 S.Ct. at p. 929] (emphasis in original).' " (*Barnes* v. *Glen Theatre, Inc., supra,* 501 U.S. at p. 586 [111 S.Ct. at p. 2471].)

The plurality and Justice Souter agreed that the fourth element of *O'Brien* was met, because the statute was narrowly tailored. As Justice Souter explained, "[d]ropping the final stitch is prohibited, but the limitation is minor when measured against the dancer's remaining capacity and opportunity to express the erotic message." (*Barnes v. Glen Theatre, Inc., supra,* 501 U.S. at p. 587 [111 S.Ct. at p. 2471].)

■ The Newport Beach ordinance satisfies *Barnes* and is constitutional. Although the prohibition applies to club owners and managers rather than performers, the substance is the same in mandating the minimum covering of pasties and a G-string. The city enacted the ordinance in part to deal with the "undesirable secondary effects associated with [adult-oriented] entertainment" (Newport Beach Ord. No. 95-15), which is a sufficient governmental interest to justify the restrictions. The ordinance is content neutral, since the city seeks to combat the secondary effects of adult businesses, not suppress expression. And, like the identical provision in *Barnes*, the "requirement that the dancers wear at least pasties and G-strings is modest, and the bare minimum necessary to achieve the [city's] purpose." (*Barnes v. Glen Theatre, Inc., supra,* 501 U.S. at p. 572 [111 S.Ct. at p. 2463].)

The Mermaid takes an untenable position when it argues the trial judge was correct to follow *Morris v. Municipal Court* (1982) 32 Cal.3d 553 [186 Cal.Rptr. 494, 652 P.2d 51], which struck down an ordinance prohibiting nude dancing. *Morris* was a state court interpretation of federal constitutional law since foreclosed by *Barnes*. While California might prohibit restrictions on nude dancing that the United States Constitution does not, such was not the decision in *Morris*. Simply put, it held a county's interest in public morality was insufficient under the First Amendment to justify infringing on the expressive conduct in nude dancing. (32 Cal.3d at p. 566.) *Barnes* held otherwise: that a governmental interest in preventing the secondary effects attendant upon adult businesses is sufficient to justify a ban on nude dancing.

The Mermaid seeks to distinguish *Barnes* because the pasties and G-string ordinance exempts "[l]ive theatrical performances performed in a concert hall, or other similar establishment located on public land." (§ 10.54.030(B).) We too doubt the constitutionality of section 10.54.030, subdivision (B). But since it was not challenged below, it cannot be attacked

for the first time on appeal. (*Planned Parenthood Services, Inc.* v. *Gorton* (1988) 200 Cal.App.3d 1, 12-13 [245 Cal.Rptr. 790].)[13]

Alternatively, the Mermaid argues the Newport Beach ordinance is invalid because it exceeds the police power delegated by the state Constitution to local authorities to "make and enforce within its limits all local, police, sanitary and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) It appears to argue that state law prohibiting obscene conduct in public (Pen. Code, § 311.6) prevents the city from regulating nudity. Again, the argument is wide of the mark.

State law preempts local legislation if an ordinance duplicates, contradicts, or enters an area fully occupied by the general laws, either expressly or by implication. If the field has been fully occupied by the state, there is no room for supplementary or complementary local legislation. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290 [219 Cal.Rptr. 467, 707 P.2d 840].) While the state has preempted the criminal aspects of sexual activity (*Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 808 [100 Cal.Rptr. 609, 494 P.2d 681]), localities remain free to regulate and license such conduct through noncriminal provisions. (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 296 [licensing of escort services]; *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179, 191 [158 Cal.Rptr. 579] [licensing of peep shows]; cf. *Eckl* v. *Davis* (1975) 51 Cal.App.3d 831, 843 [124 Cal.Rptr. 685] [nudity prohibited in public parks and on public beaches].) Moreover, state law specifically allows cities to prohibit entertainers and employees from appearing nude in clubs that serve food or beverages (Pen. Code, § 318.5), and to prohibit nude "acts, demonstrations, or exhibitions" in places open to the public so long as the ordinance does not contradict the Penal Code. (Pen. Code, § 318.6.)

State law thus does not preempt the Newport Beach ordinance. The city's ordinance is regulatory, not criminal, since permit revocation is the only sanction. More pointedly, the ordinance falls squarely within the area left open to local regulation, that is, nudity in clubs serving food and beverages or those open to the public. A noncriminal licensing statute aimed at activities expressly left open to local regulation does not conflict with the general law and is valid. (*Brix* v. *City of San Rafael* (1979) 92 Cal.App.3d 47, 53 [154 Cal.Rptr. 647].)

### III

In early 1995, the Mermaid redesigned its space to comply with the city's definition of a restaurant and applied anew for an entertainment permit. By

---

[13]The city assures us it meant to delete the exemption and will enact legislation so doing. If it fails to follow through, the Mermaid remains free to renew this challenge to the pasties and G-string ordinance.

then, the city had enacted an adult-oriented business ordinance that required an adult business permit, for which the Mermaid also applied. Following negotiations to cure defects noted by the city, it issued an entertainment and an adult-oriented business permit to the Mermaid.[14]

The Mermaid opened for business in February 1996, and admits it failed from the first to abide by the live entertainment and adult business regulations.[15] The city manager sent the Mermaid a warning letter listing each of the violations, to no avail. He then revoked the club's entertainment permit and refused to renew its adult business permit.[16] The Mermaid appealed to the city council, which appointed a private judge as a hearing officer to take evidence and make a recommendation. The hearing officer sustained the violations and recommended denying the appeal. The city agreed and, in October 1996, affirmed the revocation/nonrenewal of the permits.

In November 1996, the city sued the Nguyens, the Mermaid and its employees to enforce its ordinances, after finding the club remained open and operating despite having no permits. The Mermaid cross-complained for a writ of mandate to compel the city to set aside the revocation/nonrenewal of the permits. It also alleged civil rights violations under 42 United States Code section 1983 and the California Constitution, claiming the city had adopted "an official policy" against nude dancing, as shown by the city's enacting its ordinances and enforcing them against the Mermaid. The trial court denied the writ, granted the city summary judgment on its complaint and the Mermaid's cross-complaint, and permanently enjoined the Nguyens and Mermaid from providing any "entertainment" or operating an "Adult Oriented Business," as defined in sections 5.28.010 and 5.96.010 respectively, without valid permits.

---

[14]The Mermaid makes no mention of a use permit, still required, so we can only assume it received that permit as well.

[15]Newport Beach police officers confirmed this during eight visits to the club. Among other reported incidents, they saw "Cinnamon" perform a "couch dance" where she "rubb[ed] her groin on a patron's leg." "Ava" removed her top to let a customer "suckle on her breast" and "press[ed] her breast against the sides of [a] customer's head." "Lydia" sat in a customer's lap "rubbing her breasts in his face," then "standing on his legs, thrusting her pubic area within two or three inches of his face, and rubb[ed] his crotch with her hand." "Monique," dancing nude, "hugged and kissed a customer while soliciting [him] for a totally nude table dance for $40." And so on.

[16]One of the requirements for an adult business permit is having a valid entertainment permit (§ 5.96.025(Q)), and the adult business permit may be revoked for a violation of the live entertainment regulations. (§ 5.96.045(B.5).) We read this to mean that the city can refuse to renew an adult business permit if the live entertainment regulations are violated, as they were here, although the city manager also relied on other violations of the adult business regulations in refusing to renew the Mermaid's adult business permit.

## A

■   The Mermaid argues the ordinances it admittedly flouted were unconstitutional, violating its rights to free speech and due process. This is right in part, but it is not a big enough part to save the Mermaid. Although three of the six challenged provisions are invalid, the others are constitutional. We agree with the trial judge that the city did not infringe the Mermaid's constitutional rights in revoking its entertainment permit and refusing to renew its adult business permit.

The Mermaid challenges three no-touching rules. One prohibits, in general terms, "physical contact" between entertainers and patrons (§ 5.28.041(L).) Two others are more detailed. The city code also states that "[n]o operator, entertainer, or employee . . . shall permit to be performed, offer to perform, perform or allow patrons to perform" sexual intercourse, copulation, "fondling or stimulation" of the genitals, breasts, buttocks or pubic area (§ 5.28.041(A)). And it also says that no "operator, entertainer, or employee . . . . shall encourage or permit any person" to touch, caress or fondle the breasts, buttocks, anus or genitals of "any other person." (§ 5.28.041(B).)

The remaining rules attacked by the Mermaid deal with stage height and distance, tipping, and restroom attendants. Newport Beach requires entertainers to perform on a stage at least 18 inches high and 6 feet away from patrons (§ 5.28.041(D)). It prohibits direct tipping of entertainers by patrons (§ 5.28.041(Q)), and requires an attendant be stationed in the restroom to prevent specified activities.[17] (§ 5.96.025(L).)

Under *Barnes* v. *Glen Theatre, Inc.,* we apply the four-part *O'Brien* test to evaluate the Mermaid's claims that the ordinances violate its right to free expression. The first element, the constitutional power of Newport Beach to enact the ordinance, is not in issue. The second element, that the ordinance further a substantial governmental interest, is met because the city enacted these restrictions to combat prostitution, sexually transmitted diseases, criminal activity, and the secondary effects of adult entertainment establishments (Newport Beach Ord. No. 94-7). (*Barnes* v. *Glen Theater, Inc., supra,* 501 U. S. at pp. 582-583 [111 S.Ct. at pp. 2468-2469] (conc. opn. of Souter, J.).) As we explain below, each of the challenged restrictions furthers that interest. The third *O'Brien* element is met because the goals of crime and disease prevention are content neutral (*id.* at p. 585 [111 S.Ct. at p. 2470] (conc. opn. of Souter, J.)). The fourth element is that the restrictions be no greater than necessary to achieve the goal. As we discuss below, some of the

---

[17]They are just what you would imagine.

challenged restrictions fail to satisfy this requirement, but others are unobjectionable.[18]

In enacting the general no-contact rule prohibiting patrons from having physical contact with entertainers found in section 5.28.041(L),[19] the city could reasonably conclude that separating entertainers from customers reduces the opportunity for prostitution and drug dealing. The restriction is no more than necessary, for the message of the erotic dance is not lessened by allowing customers to look but not touch, and the provision is constitutional. (*Hang On, Inc.* v. *City of Arlington* (5th Cir. 1995) 65 F.3d 1248, 1254; *Kev, Inc.* v. *Kitsap County* (9th Cir. 1986) 793 F.2d 1053, 1061.) The phrase "physical contact" does not render the section void for vagueness. What is constitutionally required is that terms be defined with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (*Kolender* v. *Lawson* (1983) 461 U.S. 352, 357 [103 S.Ct. 1855, 1858, 75 L.Ed.2d 903].) We are confident that the ordinary ecdysiast, and her admirers, understand what is, and what is not, physical contact.

On the other hand, the city's two more detailed no-contact rules are overbroad. Section 5.28.041(A) prohibits an "entertainer or [nonmanagerial] employee" from allowing "patrons" to engage in specified sexual acts,[20] and section 5.28.041, subdivision B prohibits the same individuals from allowing "any person" to touch, caress or fondle certain anatomical parts of "any other person."[21] Neither entertainers nor nonmanagerial employees ordinarily have control over conduct between patrons of a club nor, presumably, the authority to eject them. Under these sections, the city could revoke an adult business's permit because an entertainer or waiter/waitress failed to stop one patron from fondling another patron. These restrictions are thus not

---

[18]"The Mermaid argues in its petition for rehearing that we failed to address a separate argument that the no-touching and stage height/distance requirements violate the state Constitution. But we didn't find the argument in its briefs before and we don't now. To the extent the Mermaid is raising again, in an oblique way, its invitation that we expand state constitutional law to grant more protection to the nude dance than afforded under the federal Constitution, we still find no warrant to do so.

[19]Section 5.28.041(L) provides as follows: "No entertainer shall have physical contact with any patron and no patron shall have physical contact with any entertainer while on the premises." (This designation as subdivision "L" follows the current statutory classification; in an earlier codification the provision was denominated as subdivision "(e)".)

[20]Section 5.28.041, subdivision A provides: "No operator, entertainer, or employee of a place of entertainment shall permit to be performed, or offer to perform, perform or allow patrons to perform sexual intercourse, oral or anal copulation, fondling or stimulation of human genitals, pubic region buttocks, or female breasts."

[21]Section 5.28.041, subdivision B provides: "No operator, entertainer, or employee of a place of entertainment shall encourage or permit any person upon the premises to touch, caress or fondle the breasts, buttocks, anus or genitals of any other person."

narrowly drawn to achieve the city's legitimate goals. (*Barnes* v. *Glen Theater, Inc., supra,* 501 U. S. at p. 587 [111 S.Ct. at p. 2471] (conc. opn. of Souter, J.).)

However, neither of these sections is void for vagueness, as the Mermaid also alleges. Section 5.28.041(A) prohibits the "fondling or stimulation" of human genitals, pubic region, buttocks, or female breasts. What is meant by "fondling" and "stimulation" is easily understood by the person of ordinary intelligence. Section 5.28.041(B) prohibits "touch[ing], caress[ing] or fondl[ing]" the breasts, buttocks, anus or genitals of any other person. Again, the words "touch, caress or fondle" in the context used are clear enough to anyone so inclined.

■ The stage height and distance requirements found in section 5.28.041(D) further the city's interest in crime and disease prevention, they are narrowly tailored to meet that goal, and they are constitutional.[22] (*DLS, Inc.* v. *City of Chattanooga* (6th Cir. 1997) 107 F.3d 403, 411.) "[I]t is reasonable to conclude that the six-foot [stage distance] rule would further the state interests in the prevention of crime and disease. A prohibition on contact certainly limits the spread of disease." (*Ibid.*) Contrary to the Mermaid's argument, the requirement that the stage be "six feet from the nearest area occupied by patrons" is not vague. Difficulties in configuring the club to comply do not vagueness make.

The no direct tipping rule of section 5.28.041(Q),[23] is likewise constitutional. (*Kev, Inc.* v. *Kitsap County, supra,* 793 F.2d at pp. 1061-1062.) Preventing the exchange of money between dancers and patrons reduces the likelihood of illicit transactions and, "while the tipping prohibition may deny the patron one means of expressing pleasure with the dancer's performance, sufficient alternative methods of communication exist for the patron to convey the same message." (*Id.* at p. 1062.)

The Mermaid vagueness challenge fails here too. Nothing is vague in the rule that a customer may not "directly" tip an entertainer. A person of ordinary intelligence would understand this to mean a customer cannot place

---

[22]Section 5.28.041(D) provides: "No person shall perform for patrons any entertainment . . . except upon a stage at least eighteen (18) inches above the level of the floor which is separated by a distance of at least six feet from the nearest area occupied by patrons, and no patron shall be permitted within six feet of the stage while the state is occupied by an entertainer. This subsection shall not apply to individual viewing areas where the stage is completely separated from the viewing area, floor to ceiling, by plexiglass or other clear permanent barrier."

[23]Section 5.28.041(Q) provides: "No patron, guest or invitee shall directly pay or give any gratuity to any performer, dancer, employee or model and no dancer, performer, employee or model shall solicit any pay or gratuity from any person."

money in the hand, or upon the person, of an entertainer. Moreover, the regulation does not prohibit entertainers from receiving compensation for their work; it permissibly regulates the manner of one form of compensation, tipping. That the regulation may increase the Mermaid's cost of doing business, if forced to pay dancers more to make up for less tips, does not make it unconstitutional. (*Spokane Arcade, Inc.* v. *City of Spokane* (9th Cir. 1996) 75 F.3d 663, 666.)

The Mermaid raises for the first time on appeal the additional theory that the ordinance is unconstitutional because it prohibits solicitation of tips. ██ As the city says it would have introduced evidence that this was never enforced (and it was not enforced against the Mermaid), we decline to consider the argument under the rule that a new theory based on unproven facts may not be raised on appeal. (*Mattco Forge, Inc.* v. *Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 [60 Cal.Rptr.2d 780].)

██ The restroom attendant requirement in section 5.96.025(L),[24] however, is not narrowly drawn to meet the city's legitimate goal of preventing prostitution and other illegal sexual activities when restrooms are left unmonitored, and is unconstitutional. As the Mermaid points out, the way the ordinance is drawn, the attendant is required to prevent patrons from using the facilities for their intended sanitary purposes. It directs the attendant to prevent "any person" from engaging in "specified sexual activities" which are defined elsewhere to include "touching . . . nude human genitals, pubic region, [or] buttocks," and "human excretion [or] urination." (§ 5.96.010(4), (7) ["specified sexual activities"].) But the claim that the section also violates patrons' right of privacy is without merit. Whatever individual sensibilities, there is no constitutional right to privacy in the restrooms of a place of public accommodation that the Mermaid is able to point to, nor that we are able to find or imagine. (*See Ellwest Stereo Theaters, Inc.* v. *Wenner* (9th Cir. 1982) 681 F.2d 1243, 1247-1248.)

The Mermaid argues that because the regulations apply only to adult oriented businesses, the city denies it equal protection of the law. As additional evidence, the Mermaid points out that entertainment permits are not required of religious organizations and "bona fide" nonprofit organizations, defined as those incorporated for benevolent, charitable, dramatic or literary purposes with an established membership and regular meetings, using any profits for the benefit of the organization. (§ 5.28.090(D).)

---

[24]Section 5.96.025 requires the city manager to issue an adult-oriented business permit if he finds the application complies with the requirements of the section. Subdivision L provides: ". . . Only one person shall be allowed in the restroom at any time, unless otherwise required by law, in which case the adult oriented business shall employ a restroom attendant who shall be present in the restroom during operating hours who shall prevent any person(s) from engaging in any specified sexual activities within the restroom."

There is no equal protection violation. State and local governments may regulate adult businesses differently than others, as long as the regulations are content neutral and aimed at curtailing the secondary effects associated with such businesses, which they are here. (*Mitchell* v. *Com'n on Adult Entertainment Est.* (3d Cir. 1993) 10 F.3d 123, 144, fn. 22; *Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 71-72 [96 S.Ct. 2440, 2452-2453, 49 L.Ed.2d 310].) Religious and nonprofit organizations do not pose the secondary problems of crime and risk to public health that led the city to regulate adult oriented establishments, so this distinction is permissible.[25]

B

■ The Mermaid next argues the revocation/nonrenewal provisions of the entertainment and adult business ordinances, respectively, are unconstitutional because they give the city manager too much discretion. To the contrary, both are well within the law.

Giving an administrator unbridled discretion *to issue* a permit for a sexually oriented business is an unconstitutional prior restraint on speech. (*Southeastern Promotions, Ltd.* v. *Conrad, supra,* 420 U.S. at p. 558 [95 S.Ct. at p. 1246].) Assuming, without deciding, that the same discretion to revoke a permit once given would be equally fatal, the Newport Beach scheme is far removed from such a risk.

The Mermaid challenges section 5.28.060 because the city manager "may" revoke an entertainment permit for one of seven listed reasons.[26] That the city manager apparently has discretion not to revoke, even when he can, is not fatal. The vice of too much discretion is that it allows an administrator to silence disfavored speech but allow the favored. Here that is not a risk. The Mermaid paints the unlikely scenario of the city manager's overlooking another violating adult business, while revoking its own permit. Yet the net result would be that some nude dancing escaped the city's censure. Put in free speech terms, there would be more freedom of expression, in the form of escaped thespians, rather than less. The discretion to allow this is not unconstitutional.

The Mermaid also says that allowing revocation if an applicant "gave materially . . . misleading" information on the application (§ 5.28.060(B)) leaves the city manager too much discretion, since there is no scienter

---

[25]In 1997, the city amended section 5.28.090 to delete subdivision D (Newport Beach Ord. No. 97-12), explaining it was never used and was unnecessary.

[26]We note that the Mermaid does not challenge the grounds upon which its entertainment permit was revoked, namely, that it ceased to meet the requirements for issuance of a permit and operated in violation of the ordinance. (§ 5.28.060(A), (G).)

requirement. We find no flaw in the provision. There simply isn't any issue of discretion here. The code doesn't purport to let the city manager choose to revoke or not based on the applicant's reasons for submitting misleading information, and the Mermaid does not suggest any infirmity in the city revoking a permit it was misled into granting.

The Mermaid challenges section 5.96.035, which allows an official to automatically renew adult-oriented business permits if the business "has not changed," but requires the city manager's review if there has been "[a]ny change or alteration in that [*sic*] nature or operation" of the business. The Mermaid says this leaves the city manager too much discretion and is void for vagueness. It is mistaken.

Allowing the city manager to determine if a renewal application reveals a business different from the one previously licensed does not vest him with impermissible discretion, for he is bound to an objective standard. An adult business permit is valid for one year (§ 5.96.030) and a new application must be submitted to renew. (§ 5.96.035.) The city manager is required to issue a permit, initially or on a renewal application, if the applicant satisfies enumerated requirements (§ 5.96.025), which the Mermaid does not challenge. The discretion to trigger a full application review must be read in light of the objective permit requirements, and it must be based on a change that calls into question the continued satisfaction of the requirements. So read, no unconstitutional discretion exists. Likewise, the section is not unconstitutionally vague precisely because of the objective standards. There is nothing unclear about the language used nor any risk of arbitrary or discriminatory enforcement, which are the concerns behind the void-for-vagueness doctrine.

The Mermaid also takes the extreme, unsupported, and incorrect position that the First Amendment prohibits revocation of its permits. *Perrine* v. *Municipal Court, supra,* 5 Cal.3d at page 662 does not support this proposition, and held only that a bookstore licensing ordinance was unconstitutional when it conferred virtually unlimited authority to deny any application.

The trial judge was correct to deny the Mermaid's writ petition to compel the city to rescind its decision to revoke the club's entertainment permit and not renew its adult business permit.

C

Finally, the Mermaid argues it raised triable issues of fact on its civil rights cross-complaint, so summary judgment for the city was improper. To the contrary, the record reveals no fact disputes, and the civil

rights claim is barred by the statute of limitations. The trial judge was correct in granting summary judgment.

The cross-complaint alleged a violation of 42 United States Code section 1983, which authorizes an action for deprivation of civil rights under color of law. The Mermaid claimed there existed an official city policy to prevent nude and seminude entertainment, violating its constitutional rights to free speech, equal protection, due process and privacy. It alleged this was shown by the enactment of the challenged ordinances, and by various actions taken by the city from the Mermaid's initial permit applications in 1993 through alleged police harassment before it was closed down in 1996. The trial judge rejected the Mermaid's facial challenge because he found the facts undisputed and the ordinances constitutional. He rejected the Mermaid's as-applied claim because it was barred by the statute of limitations and unsupported by the evidence.

There is little to the Mermaid's attack on summary judgment. In support of its claim of disputed facts, the Mermaid does no more than repeat its own version of events. That is not enough. The trial judge ruled there was no admissible evidence of bad motive, and the Mermaid has not pointed to anything he overlooked. *Waters* v. *Churchill* (1994) 511 U. S. 661, 681-681 [114 S.Ct. 1878, 1890-1891, 128 L.Ed.2d 686] is distinguishable, for there a civil rights violation was already established. That made motive relevant to determine if the conduct took place pursuant to an official policy or custom. Here the Mermaid failed to prove a violation, so motive is irrelevant.

The Mermaid does not challenge the ruling that its as-applied claims were time barred, nor could it. The statute of limitations applicable to section 1983 actions is a state law question (*Wilson* v. *Garcia* (1985) 471 U. S. 261 [105 S.Ct. 1938, 85 L.Ed.2d 254]), and in California it is one year (*Newton* v. *County of Napa* (1990) 217 Cal.App.3d 1551, 1563-1564 [266 Cal.Rptr. 682]) from the date plaintiff knew, or reasonably should have known, of the alleged injury. (*Gibson* v. *United States* (9th Cir. 1986) 781 F.2d 1334, cert. den. 479 U. S. 1054 [107 S.Ct. 928, 93 L.Ed.2d 979].) All save one of the alleged acts took place more than one year before the cross-complaint was filed, and as to that one the Mermaid does not challenge the trial judge's ruling that it failed to offer any admissible evidence to support the claim.

## IV

The judgment in No. G016950 is affirmed. The judgment in No. G019250 is reversed. The judgment in No. G022132 is affirmed. The city, as the prevailing party, is entitled to its costs on appeal in each case.[27]

Sills, P. J., and Crosby, J., concurred.

A petition for a rehearing was denied December 30, 1998, and the petition of appellant Tily B., Inc., for review by the Supreme Court was denied March 17, 1999.

---

[27]Nothing in our opinion should be taken to preclude the Mermaid from moving the trial judge for an award of attorney's fees and/or costs under applicable law. In a supplemental letter brief, the Mermaid claimed attorney's fees under 42 United States Code section 1988 because it compelled the city to amend section 20.72.010. In its petition for rehearing, the Mermaid argued it is entitled to attorney's fees and costs for "challenging a licensing scheme which [the Court of Appeal] found unconstitutional," and the city should not escape paying the same "by repealing an ordinance prior to decision in the Court of Appeal." These are matters that should be addressed to the trial judge, and we express no opinion on the merits of the claims.