**SPRINT PCS ASSETS, L.L.C., a Delaware limited liability company, wholly-owned by Sprint Telephony PCS, L.P., a Delaware limited partnership, Plaintiff–Appellant,**

v.

**CITY OF LA CAÑADA FLINTRIDGE, a public entity; et al., Defendants–Appellees.**

**No. 05–55014.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 19, 2005.

Filed May 23, 2006.

---

John J. Flynn, III, Esq., Michael W. Shonafelt, Esq., Nossaman, Guthner, Knox & Elliott, Irvine, CA, for Plaintiff–Appellant.

Daniel P. Barer, Esq., Pollak, Vida & Fisher, Mark W. Steres, Esq., City Attorney for the City of La Canada Flintridge, Brown, Winfield & Canzoneri, Los Angeles, CA, Javan N. Rad, Esq., Cihigoyenetche Grossberg & Clouse, Scott J. Grossberg, Esq., Rancho Cucamonga, CA, for Defendants–Appellees.

Before: HALL, O'SCANNLAIN, and PAEZ, Circuit Judges.

### MEMORANDUM *

Sprint PCS appeals from the summary judgment granted in favor of the City of La Cañada Flintridge and City officials.[1] We consider whether a City's ordinance, which allows it to deny a telecommunications company a facility permit based solely on aesthetics, is preempted by California law. In a separate, concurrently filed opinion, we consider the City's contention that even if a city ordinance is preempted under state law, it may still be valid under the federal Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56 (codified as amended in scattered sections of 15, 18, & 47 U.S.C.). The facts and prior proceedings are known to the parties, and are restated herein only as necessary.

### I

In October 2001, the City adopted "An Urgency Ordinance of the City Council of the City of La Cañada Flintridge Adopting a Moratorium on the Issuance of Any Demolition, Grading, Utility, Excavation or Other Permits Relating to Above–Ground Structures Along City Public Rights–of–Way" ("the ordinance") which gives it the authority to deny applications for permits to install telecommunication facilities solely on aesthetic grounds.

### II

### A

California Utilities Code § 7901 states:

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

1. This memorandum is to be filed with the concurrently transmitted opinion.

Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this State, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters.

Cal. Pub. Util.Code § 7901 (2005).

The California Supreme Court described the effect of California Civil Code ("Civil Code") § 536, the predecessor statute to § 7901, on local regulations: "[T]he right and obligation to construct and maintain telephone lines has become a matter of state concern. For this reason, the city cannot today exclude telephone lines from the streets upon the theory that 'it is a municipal affair.'" *Pac. Tel. & Tel. Co. v. City & County of San Francisco,* 51 Cal.2d 766, 336 P.2d 514, 519 (1959). Similarly, the authority to proscribe regulations under Civil Code § 536 on the basis of "incommode" was narrow. *See Pac. Tel. & Tel. Co. v. City & County of San Francisco,* 197 Cal.App.2d 133, 17 Cal.Rptr. 687, 694 (1961) (interpreting "incommode" to mean the prevention of "unreasonable obstruction of the public use").

In 1991, the California state legislature adopted § 7901.1(a), which reads in relevant part: "It is the intent of the Legislature, consistent with Section 7901, that municipalities shall have the right to exercise reasonable control as to the time, place, and manner in which roads, highways, and waterways are accessed." Cal. Pub. Util.Code § 7901.1(a) (2005).

B

Article XI, § 7 of the California Constitution states that a "county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." A local law that "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication" will be preempted by the state law. *Fireman's Fund Ins. Co. v. City of Lodi,* 302 F.3d 928, 941 (9th Cir.2002) (internal quotation omitted); *Tily B., Inc. v. City of Newport Beach,* 69 Cal.App.4th 1, 81 Cal.Rptr.2d 6, 18 (1998) (In California, "[s]tate law preempts local legislation if an ordinance duplicates, contradicts, or enters an area fully occupied by the general laws, either expressly or by implication."). Therefore, if Utilities Code §§ 7901 and 7901.1 apply, they may preempt the local ordinance.

C

Section 7901 gives telephone companies broad authority to construct telephone lines and other fixtures "in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters." By the plain text of the statute, the only substantive restriction on telephone companies is that they may not "incommode the public use" of roads. It is possible that extremely severe aesthetic objections could conceivably incommode the use of the roads. *See* 7 *The Oxford English Dictionary* 806 (Oxford University Press, 2d ed., 1989) (defining "incommode" as "[t]o subject to inconvenience or discomfort; to trouble, annoy, molest, embarrass, inconvenience"). An extraordinarily unattractive wireless antenna might, for example, cause such visual blight that motorists are uncomfortable using the roads. Counsel for the City posited, during oral argument, that an unattractive wireless structure could cause "discomfort."

However, the most natural reading of § 7901 grants broad authority to telephone

companies to install necessary wires and fixtures, so long as they do not interfere with public use of the roads. The text focuses on the *function* of the road—its "use," not its enjoyment. Based solely on § 7901, it is unlikely that local authorities could deny permits based on aesthetics without an independent justification rooted in interference with the function of the road.

## D

Section 7901, however, has been modified by § 7901.1. Two provisions determine the extent of local regulatory authority under § 7901.1: first, the breadth of "time, place, and manner," and second, the meaning of "are accessed."

The phrase "time, place, and manner" seems to expand local regulatory authority beyond the "incommode" standard in the earlier § 7901. Despite some legislative history, of which the district court took judicial notice, that portrays § 7901.1 as merely "clarify[ing]" the law, the plain text indicates that this provision expands municipal authority.[2] April 24, 1995, Statement for SB 621 to Cal. Sen. Energy, Utilities and Communications Comm. (S. 1994–95 Reg. Sess.). Specifically, "incommode" refers to the disruption of the reasonable use of the road. While the authority to restrict building based on "time, place, and manner" gives cities more authority to determine what constitutes a reasonable use of the road, this language does not seem to enhance greatly the City's regulatory latitude—certainly not to the extent necessary to engage in aesthetic regulation.

A regulation of appearance could conceivably be considered a regulation of the "manner" in which telephone companies use public roads. However, this seems to stretch the word "manner," which, coupled with "time" and "place," cannot be read so broadly. More importantly, the City's reading is illogical when coupled with the "are accessed" language that follows. Section 7901.1 only gives cities the authority to regulate the manner is which roads "are accessed," not the authority to regulate the manner in which telephone companies affect the road's appearance. The better reading of "time, place, and manner" does not expand the City's authority far enough to include aesthetic regulation.

Further, the "are accessed" language restricts local authority: cities may only regulate the way in which roads "are accessed," not the way they appear. As with § 7901, the regulatory power is functional, and does not extend to aesthetics. In sum, under Utilities Code §§ 7901 and 7901.1, local regulators retain no authority to deny permits based on aesthetics.

## E

The City, however, cites cases holding that aesthetics can properly be considered substantial evidence. *See, e.g., Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.,* 181 F.3d 403, 409 (3d Cir. 1999) (noting that aesthetic considerations, as opposed to alleged health effects, are proper evidence under 47 U.S.C. § 332(c)(7)(B)(iii)); *Aegerter v. City of Delafield,* 174 F.3d 886, 891 (7th Cir.1999) ("Nothing in the Telecommunications Act forbids local authorities from applying general and nondiscriminatory standards derived from their zoning codes, and we note that aesthetic harmony is a prominent goal underlying almost every such code."). However, whether aesthetic evidence *can*

---

**2.** Some legislative history accords with this reading as well. *See, e.g.,* Analysis of SB 621, Cal. Sen. Rules Comm., Office of Senate Floor Analyses (S. 1994–95 Reg. Sess.) ("This bill is intended to *bolster* the cities' abilities with regard to construction management." (emphasis added)).

be a used to support a permit denial in the abstract is not at issue—the issue is simply whether a city can consider such evidence consistent with California law. Under Utilities Code §§ 7901 and 7901.1, they cannot.

### III

Therefore, we conclude that the City ordinance, which allows the City to deny permits based solely on aesthetics, is preempted by California Public Utilities Code §§ 7901 and 7901.1.

REVERSED.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.